Receipt # 062862

ORIGINAL

ECF

FILED
MAY 6 2005
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TELENOR SATELLITE SERVICES, INC.
1101 Wootton Parkway, 10th Floor
Rockville, MD 20852,

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 05- 528C

COMPLAINT

For its complaint, Telenor Satellite Services, Inc. (Telenor), alleges as follows:

Nature of the Case

1. For their mutual benefit, Telenor delivered to the Department of State satellite communications equipment to allow high speed data and voice satellite communications, at no charge, for humanitarian purposes to support the USAID Disaster Assistance Response Team (DART) pilot program in Iraq for two months. Telenor loaned this equipment under express conditions, including that any use of the equipment other than in support of the two-month DART pilot program would be at Telenor's service rates. Instead of returning with all the equipment upon the conclusion of the two-month pilot program, the Department of State left some of the equipment in Iraq, and the Army used it for purposes unrelated to the DART program and after the specified period of use. However, the Department of State has refused to pay damages for the unauthorized use as specified in the Contract.

## Jurisdiction

2. This Court has jurisdiction under section 1491(a) of the Judicial Code. 28 U.S.C. § 1491(a) (2000). This Contract is a bailment contract not covered by the Contract Disputes Act.

## Parties

3. Telenor is a fully-owned subsidiary of Telenor Satellite Services Holdings, Inc. Telenor provides satellite communications services for both commercial and governmental customers. Telenor is an international common carrier regulated by the Federal Communications Commission.

4. The United States has acted in this matter through its Department of State.

## Statement of the Facts

5. The Contract between Telenor and the Department of State is expressed in a letter dated March 12, 2003 (attached as Attachment A), from Mr. Reid A. Daugherity of the Department of State, Bureau for Intelligence and Research, to Ms. Britt Carina Horncastle, President of Telenor. Mr. Daugherity had authority to enter into this Contract.

6. The Contract provided that the specified Telenor equipment (four GAN terminals) would be used for a two-month DART pilot program commencing mid-March 2003 "to demonstrate and verify the feasibility of utilizing mobile satellite communication technology to improve coordination of global disaster recovery and reconstruction efforts of governments and non-governmental organizations"

(Attach. A). The requirement for authorization by Telenor of any other use of the bailed equipment and the amount due for any other use were also specified in the Contract: "Telenor must authorize any other use of the GAN terminals for purposes other than what has been stipulated in the two-month DART pilot program. In the event that the terminals should be used for other purposes, Telenor will provide service to the user at agreed upon service rates" (Attach. A).

7. Telenor is required by the FCC to post its standard service rates on its website, and, absent other agreement with the customer, to charge those rates for its services. Telenor did not agree to vary its published rates for the Department of State for uses of its bailed equipment other than for the DART pilot program for the period specified.

8. The State Department took possession of the Telenor equipment and installed it in Iraq. In April and May 2003, the State Department, in conjunction with the Army's 354th Civil Affairs Brigade, utilized the equipment to transmit "short-burst" communications in furtherance of the DART pilot program.

9. Upon the conclusion of the use in May 2003 for the DART pilot program, without authorization from Telenor, the State Department left two Telenor terminals in the possession of the Army.

10. In May and June 2003, without Telenor's authorization or knowledge, Telenor's bailed equipment was used to make satellite communications for purposes other than the DART pilot program and after the specified period of use. When Telenor discovered this use, it demanded the return of its equipment and shut off

the transmission capability of the equipment. However, significant transmissions for purposes other than the DART pilot program occurred after the two-month period and prior to Telenor's discovery of that use. The State Department subsequently returned all the Telenor equipment.

11. Under cover of letter dated June 26, 2003 (attached as Attachment B), Telenor invoiced the State Department, at Telenor's standard published service rates, for the satellite telecommunication services provided for other than the DART pilot program. The invoice was for $378,660.89.

12. By letter dated June 9, 2004 (attached as Attachment C), Mr. Dennis J. Gallagher, Assistant Legal Adviser, Buildings and Acquisitions, conceded to Ms. Barbara L. Spencer, General Counsel of Telenor, that Mr. Daugherity had had actual authority to enter into the bailment Contract of March 12, 2003 (Attach. A). He also conceded that the State Department had left two Telenor terminals in the possession of the Army when Mr. Daugherity left Iraq. Mr. Gallagher claimed, however, that Mr. Daugherity did so only after consulting with the CEO of another company which had provided other equipment and software for the DART program, who reportedly had told him that Ms. Horncastle had authorized the State Department to leave Telenor's bailed equipment with the Army.

13. By letter dated July 1, 2004 (attached as Attachment D), Ms. Spencer informed Mr. Gallagher that Telenor disputed that it had given approval, either directly or indirectly, for the State Department to leave its bailed equipment in Iraq with the Army. In fact, Telenor did not give such approval.

14. Even if the transfer of the equipment by the Department of State to the Army had been authorized by Telenor, as alleged in the State Department's June 9 letter (Attach. C), the bailment did not end until the equipment was returned, and the express terms and conditions of the Contract still applied.

15. The Army investigated the use of Telenor's equipment after the two-month period of bailed use, and Telenor has received a redacted version of that report through a FOIA request (excerpts of the report are attached as Attachment E). The Army personnel used the Telenor equipment mainly for personal use and, in any event, not for the DART project. The Army in its investigation report concluded, *inter alia*, that the State Department did not leave clear instructions as to the appropriate use of the equipment and so the State Department should pay Telenor's bill, rather than the Army.

16. The Army personnel questioned by the Army investigator claimed the State Department had left the equipment with instructions that it could be used by soldiers for personal, "morale" use. The State Department individual questioned (probably Mr. Daugherity, name redacted) claimed that he had left instructions that the terminals be used only "for support of the humanitarian effort" and that he "emphasized that . . . these systems should in no way be utilized in support of combat operations. In this context, it was certainly clear that personal use of these systems (e.g., for voice calls home or 'surfing' the Internet) was not authorized" (Attach. E).

17. The United States and the State Department have violated the terms of the Contract by, *inter alia*, (a) using the bailed equipment for other than the authorized purpose, (b) failing to obtain Telenor's advance approval for use of the bailed equipment for other than the authorized purpose, (c) using the bailed equipment after the Contract's two-month period of use, and (d) refusing to pay the damages specified for use of the bailed equipment for purposes and at times other than those authorized.

18. Telenor fulfilled all of its duties under the Contract.

Count I

Breach of Contract

19. Telenor incorporates by reference paragraphs 1 through 18 above.

20. Telenor and the State Department had a bailment Contract for their mutual benefit as reflected in the State Department's letter of March 12, 2003 (Attach. A).

21. The State Department violated the terms and conditions of the Contract and must pay the amount specified in the Contract as damages for that circumstance.

WHEREFORE, Telenor requests it be awarded the relief specified in its Requests for Relief.

Requests for Relief

Telenor requests that the Court grant it the following relief:

1. damages in the amount of $378,660.89, plus interest, or in such other amount as the proof may show;

2. its costs of this litigation, including attorneys' fees and costs; and

3. such other relief as the Court deems just and appropriate.

Respectfully submitted,

Frederick W. Claybrook, Jr.
(Counsel of Record)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Of Counsel

Barbara Spencer, Esquire
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

May 6, 2005

2156113