IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC., Plaintiff, | ) | |
| v. | ) | No. 05-528C<br>Baskir, J. |
| UNITED STATES, Defendant. | ) | |

TELENOR'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE AUTHORITY

Pursuant to RCFC 56, Telenor moves for partial summary judgment with respect to the government's defense that the bailment contract entered into with Telenor was not authorized by a representative of the Department of State with appropriate contracting authority. In support of this motion, Telenor states as follows:

1. Telenor has set out the material facts relating to this motion in its Proposed Findings of Uncontroverted Fact attached this motion. The Proposed Findings are supported in turn by relevant documents and the Affidavit of Lawrence Paul.

2. Under the uncontroverted material facts, Telenor is entitled to summary judgment because the Department of State representatives with

whom Telenor dealt had both actual and implied contracting authority to enter the bailment contract with Telenor.

WHEREFORE, Telenor request that its motion be granted for the reasons stated here and in its accompanying brief in support of this motion.

Respectfully submitted,

s/Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.
(Counsel of Record)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

December 2, 2005

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-528C<br>Baskir, J. |
| UNITED STATES, | ) | |
| Defendant. | ) | |

TELENOR'S BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT RE AUTHORITY

It is surprising that this motion had to be brought. State Department counsel, after investigating the situation, stated the Department's "position" that Mr. Reid Daugherity, the State Department employee who signed the bailment contract with Telenor, had full authority to do so. And that is the State Department's position for good reason. Mr. Daugherity's Position Description repeatedly grants him the necessary authority to have executed the bailment contract.

The Department of Justice, however, despite the State Department position and the terms of Mr. Daugherity's Position Description, has asserted as its principal defense to this action that Mr. Daugherity did not have authority to execute the agreement. In discussions, DOJ counsel has

repeatedly referenced the recent decisions of Judge Hewitt in *Leonardo v. United States*, 60 Fed. Cl. 126 (2004) and 63 Fed. Cl. 552 (2005). Those decisions lay out the basic law controlling this issue, and they directly support – indeed, dictate – the finding of authority of Mr. Daugherity to agree to the bailment contract at issue here.[1] (Attach. A.)

## I. The Telenor/State Department Bailment Agreement Is Not a Procurement Contract Requiring the Signature of a Procuring Contracting Officer

The Telenor/State Department Agreement is a bailment contract entered into for the mutual benefit of the parties. (FF ¶¶ 1, 2 & Attach. A.) The arrangement it describes fits the prototype for a bailment:

> A bailment relationship occurs when "an owner, while retaining title, delivers personality to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions."

*Leonardo*, 60 Fed. Cl. at 129 (quoting *Lionberger v. United States,* 178 Ct. Cl. 151, 371 F.2d 831, 840 (1967)).

---

1 Rule 56(a) provides for partial summary judgment. RCFC 56(a). The standards for partial summary judgment are the same as those for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 457 (1999). Telenor assumes familiarity with its Proposed Findings of Uncontroverted Fact ("FF"). The attachment references are to those of the Proposed Findings.

Because a bailment contract does not involve the procurement of goods and services, it is not a procurement contract and does not fall within the scope of the Contract Disputes Act. *Id.* at 129-30. From this it follows that Mr. Daugherity did not have to be a Procuring Contracting Officer. *Id.* at 130. *See also Son Broad., Inc. v. United States*, 52 Fed. Cl. 815, 821 (2002) (contractual permits issued by Forest Service are not procurement contracts requiring issuance by a "contracting officer"); *Zoubi v. United States*, 25 Cl. Ct. 581, 587 (1992) ("a procuring agency's CO is not the only person capable of binding the agency in contract").

## II. Mr. Daugherity Had Express and Implied Authority to Enter into Bailment Agreements

We start with the admission of Mr. Dennis Gallagher, Department of State counsel, who was tasked to "determine the position of the Department of State with respect to the excessive use of [Telenor equipment] loaned by Telenor to Reid Daugherity, a civil servant employee of the Department of State." (FF ¶ 12 & Attach. C.) After meeting with Mr. Daugherity and the Executive Director of the Bureau for Intelligence and Research, the Bureau in which Mr. Daugherity is employed, Mr. Gallagher confirmed that

> Mr. Daugherity was acting at all times in good faith and within the scope of his employment with the

> Department of State. I have found no reason to question Mr. Daugherity's actual authority to sign the letter of March 12, 2003 to Ms. Horncastle [of Telenor] . . . .

(FF ¶ 12 & Attach. C.)

Admissions of counsel stating litigation positions are entitled to significant, if not conclusive, evidentiary weight:

> As a general rule, statements made by an attorney concerning any matter within the scope of his employment are admissible. *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984); Fed. R. Evid. 801(d)(2)(D). Government attorneys in criminal cases are exempt from this rule . . . . In civil cases, however, where the adversarial process insures trustworthiness, statements by government attorneys are admissible. . . . If [the statements] are made in a pleading or in trial, <u>or are sufficiently formal and conclusive</u>, they may be treated as binding judicial admissions.

*United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1564 (E.D. Tex. 1986), *aff'd*, 829 F.2d 532 (5th Cir. 1987) (emphasis added). *See also Williams v. Union Carbide Corp.,* 790 F.2d 552, 555-56 (6th Cir. 1986) (statements by attorneys in other suits or claims are admissible as admissions) (citing *McKeon; United States v. Margiotta,* 662 F.2d 131, 142 (2d Cir. 1981); *United States v. Flores,* 628 F.2d 521 (9th Cir. 1980); *Contractor Util. Sales v. Certain-Teed Prods. Corp.,* 638 F.2d 1061, 1084 (7th Cir. 1981)). It is hard to conceive of an out-of-court statement that could be more "formal and conclusive" than that of Mr. Gallagher

concerning Mr. Daugherity's authority to enter the bailment contract. It was made by counsel, in response to a demand for payment, with litigation clearly on the horizon, after fully researching the issue. (FF ¶¶ 11, 12 & Attach. C; Paul Aff. (Attach. B) ¶ 8.) It is the agency's "position" on the matter. (FF ¶ 12 & Attach. C.) This, then, is a binding judicial admission. *D.K.G. Appaloosas,* 630 F. Supp. at 1564.

Even if the Department of Justice were permitted to backpeddle on the authority issue,[2] it cannot do so successfully as a matter of fact. Mr. Gallagher's conclusions are fully supported by Mr. Daugherity's State Department Position Description, which gives him both express and implied contracting authority for entering the bailment agreement with Telenor.

---

2 The Department of Justice does not contest Mr. Gallagher's conclusion that Mr. Daugherity was acting within the scope of his employment by leading the DART Pilot Program. The "Primary Purpose" as stated in Mr. Daugherity's Position Description specifically encompasses humanitarian projects like the DART Pilot Program: "The incumbent of this position is . . . responsible for providing all-source intelligence analysis on complex humanitarian emergencies and natural disasters, including contingency planning, implementing response mechanisms, managing interagency information sharing, and conducting comparative assessments." (FF ¶ 13 & Attach. D.) His areas of expertise include "field-based coordination of geographic information databases," and his areas of responsibilities "include managing the U.S. Governments' [sic] interagency coordination of humanitarian information . . . ." (FF ¶ 13 & Attach. D.)

A. Mr. Daugherity Had
<u>Express Authority to Contract</u>

The Court in *Leonardo* looked to the Position Description of the State Department individual who had made the commitment (in that instance for storage of art work) to determine whether he had express or implied authority to have done so. 60 Fed. Cl. at 130-31; 63 Fed. Cl. at 557-60. The Department of Justice apparently concedes that this is the appropriate analysis, as it provided Mr. Daugherity's Position Description with its Initial Disclosure and relies upon it for its argument that he lacked authority to enter into the bailment agreement with Telenor. In *Leonardo*, the Court determined that the individual who had made the agreement lacked express authority because the Position Description stated expressly that he had no authority to make a commitment unless it had been cleared by his supervisor. *Id.* at 558-59 ("Clearance by the supervisor is required in all instances."). Mr. Daugherity's Position Description contains no such approval requirement. Rather, it repeatedly gives him authority to enter into agreements.

The following portions of Mr. Daugherity's Position Description outline his positions and provide express contracting authority to him:

> <u>2.) Represents Bureau or Department . . .</u>
> ***Participate actively in bilateral and multilateral negotiations and information exchanges . . . .***

> . . . Serves as a primary point of contact with the Office of Secretary and as a ***direct focal point in the Department on all matters relating to area of expertise.*** . . .
>
> . . . .
>
> 3.) Serves as Bureau's or Department's Action Office[r] . . .
>
> ***Serves as the Department's lead officer in implementing intelligence support for a treaty or agreement . . . .***
>
> . . . .
>
> Factor 1-8 . . .
> Knowledge Required by the Position
>
> . . . .
>
> Skill in oral and written communication to . . . negotiate agreements.
>
> . . . .
>
> Factor 6-3 . . .
> Personal Contacts
>
> Contacts are with . . . officials of non-governmental organizations. Contacts occur in a wide variety of planned/unplanned, formal/informal settings . . . .

(Emphasis in original.) As State Department counsel conceded, this language means exactly what it says: Mr. Daugherity had authority as the State Department representative to negotiate bailment agreements with third parties with respect to humanitarian projects like DART.

B. Mr. Daugherity Possessed
Implied Contracting Authority

Government employees hold implied authority to bind the government "'when such authority is considered to be an integral part of the duties assigned to [them].'" *H. Landau & Co. v. United States*, 886 F.2d 332, 324 (Fed. Cir. 1989) (quoting JOHN CIBINIC, JR. & RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 43 (1982)). "Contracting authority is integral to a government employee's duties when the government employee could not perform his or her assigned tasks without such authority and the relevant agency regulation does not grant such authority to other agency employees." *Leonardo*, 63 Fed. Cl. at 557 (quoting *Flexfab, LLC v. United States*, 62 Fed. Cl. 139, 148 (2004), *aff'd*, 424 F.3d 1254 (Fed. Cir. 2005)).

In *Leonardo*, the Court did find that the supervisor of the State Department individual who had made the commitment had implied contracting authority. The Court based that conclusion on the language in the supervisor's Position Description which stated that she was to "[p]lan, coordinate and carry out cultural programs in support of public diplomacy objectives . . . [and] [m]anage the activities of the Cultural Center . . . ." 63 Fed. Cl. at 559-60. The Court found it necessary for her to be able to enter into bailment contracts with artists to allow her to carry out these duties. *Id.*

Mr. Daugherity's Position Description and his circumstances make an even stronger case for implied authority. Mr. Daugherity's Position Description describes him as a "deputy division chief" and assigns him to serve as the "Bureau's or Department's Action Office[r]" and "lead officer" on the programs he manages. (FF ¶ 13 & Attach. D (emphasis omitted).) He is the "direct focal point in the Department on all matters relating to [his] area of expertise." (FF ¶ 13 & Attach. D (emphasis omitted).) Indeed, his Position Description includes exactly the language on which Judge Hewitt relied to find implied contracting authority in *Leonardo*, plus more:

> Primary Purpose: The incumbent of this position is . . . responsible for . . . contingency planning, implementing response mechanisms, managing interagency information sharing, and conducting comparative assessments. . . .
>
> Factor 2-5 . . .
> Supervisory Controls
>
> . . . .
>
> Assumes responsibility for planning, coordinating, and carrying out projects and informs the supervisor as appropriate.
>
> . . . .
>
> Factor 5-5 . . .
> Scope and Fact
>
> . . . The scope of the assignment area is substantial and includes: . . . planning and carrying out special

> research studies that address critical issues of broad scope and impact.
>
> 3.) Serves as Bureau's or Department's Action Office[r] . . .
>
> ***Serves as the Department's lead officer in implementing intelligence support for a treaty or agreement on one or more complex, highly sensitive programs involving global, regional and country-specific issues.***
>
> Areas of responsibility include managing the U.S. Governments' [sic] interagency coordination of humanitarian information . . . .
>
> . . . .
>
> Factor 7-3 . . .
> Purpose of Contacts
>
> Contacts are to . . . plan[,] organize, and coordinate activities, establish liaison, represent the Bureau, resolve problems, and respond to urgent developments. . . .

(Emphasis in original.)

Once again, the conclusion of Department of State counsel that Mr. Daugherity had actual authority to negotiate the bailment agreement is fully supported by Mr. Daugherity's assigned positions and duties. The authority to contract is necessarily implied from his "focal point" positions and responsibilities to plan, manage, organize, lead, and coordinate

humanitarian projects like DART.[3] *Leonardo,* 63 Fed. Cl. at 559-60. *See also Advanced Team Concepts, Inc. v. United States*, No. 02-197, slip op. at 4 (Sept. 28, 2005); *Son Broad.,* 52 Fed. Cl. at 821 & n.4; *Zoubi,* 25 Fed. Cl. at 587-88.

## Conclusion

Mr. Daugherity had authority to enter the bailment agreement with Telenor. Department of State counsel admits it; Mr. Daugherity's Position Description gives him the express authority to negotiate agreements on projects like the DART Pilot Program; and Mr. Daugherity had implied contracting authority based on his assigned offices and responsibilities to plan, coordinate, lead, carry out, and manage such projects. Not only do

[3] Two distinctions between this case and the facts in *Leonardo* also support summary judgment on the authority issue here. First, Judge Hewitt in *Leonardo* found that the official who had made the agreement did not have authority because his Position Description said that "[c]learance by the supervisor is required in all instances" before a commitment could be made. 63 Fed. Cl. at 558. Here, no such condition is placed on Mr. Daugherity's authority to negotiate agreements. While his Position Description under "Supervisory Controls" (quoted above) says he has responsibility for "planning, coordinating, and carrying out projects," he is only to inform "the supervisor as appropriate," giving him full discretion. (FF ¶ 13 & Attach. D.) Second, in *Leonardo* the Court found the bailment contract had not been ratified because the supervisor who did have implied contracting authority did not know the details of the arrangement. *Id.* at 560-70. Here, Mr. Daugherity's superiors were fully informed of the bailment and approved it. (FF ¶¶ 14, 15 & Paul Aff. (Attach. B) ¶¶ 3, 6.)

the uncontroverted facts support summary judgment on this issue, but the very decision on which DOJ principally relies compels it.

Respectfully submitted,

s/Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.
(Counsel of Record)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

December 2, 2005