IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC., Plaintiff, | ) | |
| v. | ) | No. 05-528C (Baskir, J.) |
| UNITED STATES, Defendant. | ) | |

TELENOR'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT RE AUTHORITY AND OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Frederick W. Claybrook, Jr.
(Counsel of Record)

Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

January 31, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

I. The Government Admits This Is Not a Procurement Contract ........................................ 2

II. Mr. Daugherity Had Authority to Enter into the Bailment Contract ........................................ 2

III. Mr. Daugherity's Position Description Demonstrates His Authority ........................................ 4

IV. At a Minimum, State Department Counsel's Formal Position Statement Deserves Significant Evidentiary Weight ........................................ 6

V. The Bailment Contract Was Ratified by Those with Bailment Authority ........................................ 7

VI. In the Alternative, Any "Procurement" Component of the Bailment Is Segregable ........................................ 9

VII. Summary Judgment Against Telenor Is Inappropriate for Other Reasons ........................................ 10

Conclusion ........................................ 13

TABLE OF AUTHORITIES

**Cases**

*Aero-Abre v. United States*,
39 Fed. Cl. 654 (1997) .......... 8

*Chaffee v. Kraft Gen. Foods, Inc.*,
886 F. Supp. 1164 (D.N.J. 1995) .......... 7

*Clark v. United States*,
95 U.S. 539 (1877) .......... 11, 12

*Coast Fed. Bank, FSB v. United States*,
323 F.3d 1035 (Fed. Cir. 2003) .......... 6

*Dolmatch Group, Ltd. v. United States*,
40 Fed. Cl. 431 (1998) .......... 5, 8

*Gould, Inc. v. United States*,
67 F.3d 925 (Fed. Cir. 1995) .......... 12

***Janowsky v. United States*,**
133 F.3d 888 (Fed. Cir. 1998) .......... 11, 13

***Leonardo v. United States*,**
60 Fed. Cl. 126 (2004),
*aff'd,* 2006 WL 87619 (Fed. Cir. Jan. 11, 2006)
(unpublished op.) .......... 2, 4, 5

*MacDonald v. Gen. Motors Corp.*,
110 F.3d 337 (6th Cir. 1997) .......... 7

*Philadelphia Suburban Corp. v. United States*,
217 Ct. Cl. 705 (1978) .......... 11

***Prestex Inc. v. United States*,**
162 Ct. Cl. 620, 320 F.2d 367 (1963) .......... 12

*Roberta B. v. United States*,
61 Fed. Cl. 631 (2004) ........................................................................3

*Rumsfeld v. United Techs. Corp.*,
315 F.3d 1361 (Fed. Cir. 2003) ...........................................................6

*Silverman v. United States*,
230 Ct. C 679 F.2d 865 (1981) ...........................................................11

***Son Broad., Inc. v. United States*,**
52 Fed. Cl. 815 (2002) ........................................................................2

*United States v. Amdahl Corp.*,
786 F.2d 387 (Fed. Cir. 1986) ............................................................12

***United States v. D.K.G. Appaloosas, Inc.*,**
630 F. Supp. 1540 (E.D. Tex. 1986),
*aff'd,* 829 F.2d 532 (5th Cir. 1987).......................................................6, 7

***Urban Data Sys., Ins. v. United States*,**
699 F.2d 1147 (Fed. Cir. 1983) ..................................................9, 10, 12

*Williams v. United States*,
130 Ct. C 127 F. Supp. 617 (1955)........................................................8

**Constitution, Statutes, and Regulations**

U.S. Const. amend V .........................................................................12

22 U.S.C. (2000)
§ 2651 ..................................................................................................3
§ 2651a ................................................................................................3
§ 2664 ..................................................................................................3

48 C.F.R. (2003)
§§ 601.601, *et seq.*. ..............................................................................4

U.S. Department of State Foreign Affairs Manual (2003)
1 FAM 433.3(a) ....................................................................3, 4, 8
1 FAM 014.3(c) . ......................................................................3, 8
1 FAM 014.6.c(1) ........................................................................8
1 FAM 014.7(b) ..........................................................................8

**Other Authority**

8A AM. JUR. 2D *Bailments* (1997)
§ 256 ...............................................................................9, 10
§ 260 ....................................................................................10

15 GRACE MCLANE GIESEL, CORBIN ON CONTRACTS § 89.10
(rev. ed. 2003) ...........................................................................9

RESTATEMENT (SECOND) OF CONTRACTS (1979)
§ 184 ......................................................................................9
§ 346(1)...................................................................................2

8 RICHARD A. LORD, WILLISTON ON CONTRACTS § 19:69
(4th ed. 1998) ...........................................................................10

9 WIGMORE, EVIDENCE § 2588 (Chadbourne rev. 1981) ..................................7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TELENOR SATELLITE SERVICES, INC., Plaintiff, v. UNITED STATES, Defendant. | No. 05-528C (Baskir, J.) |

TELENOR'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT RE AUTHORITY AND OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

The government admits that the bailment involved here is not a procurement, but bases its arguments on the assumption that it is. At the most basic level, that is why the government's arguments fail.

Mr. Daugherity, as State Department counsel formally admitted after review, research, and consultation, had full authority to enter into a bailment agreement with Telenor for a defined purpose squarely within his authority. He did not agree to procure satellite communications equipment and related services; he obtained them for free from Telenor – under the specified conditions of the bailment. But because Mr. Daugherity had authority to enter into this non-procurement contract, the government is bound by it and must pay the damages for its breach, even if that entails

paying out money for the unauthorized use of the bailed equipment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 346(1) (1979) ("The injured party has a right to damages for any breach by a party against whom the contract is enforceable . . . .").

## I. The Government Admits This Is Not a Procurement Contract

The government takes awhile, but admits late in its brief (at 8-9) that the contract signed by Mr. Daugherity is not a procurement contract covered by the CDA. While the obvious conclusion from this is that Mr. Daugherity did not have to be a Procuring Contracting Officer, *Leonardo v. United States*, 60 Fed. Cl. 126, 130 (2004), *aff'd*, 2006 WL 87619 (Fed. Cir. Jan. 11, 2006) (unpublished op.); *Son Broad., Inc. v. United States*, 52 Fed. Cl. 815, 821 (2002), the government's argument (in both the brief and declarations) is principally that Mr. Daugherity did not have a procurement warrant and is not in the procurement delegation chain. It doesn't matter. The agreement here is for a bailment, not an acquisition.

## II. Mr. Daugherity Had Authority to Enter into the Bailment Contract

The government claims it can't find the delegation of authority to Mr. Daugherity or his group. That's because it is looking in the wrong place.

The relevant delegations are not in the procurement chain, but in those related to accomplishment of projects for humanitarian purposes.

The Secretary of State is the "head" of the Department of State. 22 U.S.C. § 2651 (2000). "[T]he Secretary may delegate authority to perform any of the functions of the Secretary or the Department to officers and employees under the direction and supervision of the Secretary." *Id.* § 2651a. Furthermore, the "Secretary may delegate the authority to redelegate any such functions." *Id.* *See also id.* § 2664. Redelegations are found in the Department of State's regulatory Foreign Affairs Manual ("FAM," excerpts attached in the Appendix). *See Roberta B. v. United States,* 61 Fed. Cl. 631, 636 (2004) (FAM is a regulation).

Mr. Daugherity worked in the Office of the Geographer and Global Issues. (Daugherity Decl. ¶ 1, U.S. Appx. at 3). That Office handles numerous issues, including "humanitarian crises" like were involved with the DART Pilot Program. 1 FAM 433.3(a) (Tel. Appx. at 33). The FAM expressly contemplates that each discrete office will exercise complete control within its domain: "[Offices] usually are responsible for a complete functional field . . . ." *Id.* 014.3(c) (Tel. Appx. at 24). As Acting Director of the Office in March 2003 (Schwartz Decl. ¶ 1, U.S. Appx. at 9), Mr. Lee Schwartz had full authority to act on behalf of the Office and the

Department to carry out the functions of his Office. Only procurement authority pursuant to the Federal Acquisition Regulation was excluded by other regulations. *See* 48 C.F.R. §§ 601.601 *et seq.* (2003).

Mr. Daugherty's authority to enter into the bailment agreement is set out in his position description. The position description is a delegation: it defines the contours of what an employee can do. *See* 1 FAM 014.7.b (Tel. Appx. at 27-28). Because the position description authorized Mr. Daugherty to enter into this bailment agreement, it was totally appropriate for his supervisor, Director Schwartz, to "direct[ ]" him to meet with representatives of Telenor and to finalize arrangements for the bailment. (Daugherty Decl. ¶ 9, U.S. Appx. at 5.) Mr. Daugherty was authorized to do so.

## III. Mr. Daugherty's Position Description Demonstrates His Authority

No matter how you slice and catalogue its provisions, the position description for Mr. Daugherty gives him authority to reach non-procurement agreements with private companies to carry out his projects, for which he is the State Department's "lead officer" and "focal point." (Tel. Appx. at 5.) The position description contains the identical language to that found by Judge Hewitt in *Leonardo* to give implied bailment contracting authority. 63 Fed. Cl. at 559-60. There is no reason for a different result

here. Indeed, there is even more express language confirming Mr. Daugherity's authority than there was in the position description at issue in *Leonardo*.

The government avoids talking about this most relevant precedent – and other precedent cited by Telenor – and instead relies "*cf.*" on *Dolmatch Group, Ltd. v. United States*, 40 Fed. Cl. 431 (1998). Not only does *Dolmatch* involve a procurement contract, not a bailment contract, but the government in its motion papers left out the central facts that defeated implied authority with respect to that job description. In *Dolmatch*, the position description only allowed negotiating about terms but expressly said a superior had to approve any acquisition. *Id.* at 438. That language does not appear in Mr. Daugherity's position description. Instead, Mr. Daugherity is described as the "lead officer" with full powers to conclude arrangements necessary to carry out his responsibilities, including with those outside the agency. Thus, *Dolmatch*, if anything, reinforces Mr. Daugherity's express and implied authority.

Extrinsic evidence about the position description such as that proffered in the declarations of Messrs. Daugherity (¶ 4), Schwartz (¶ 4), and Halter (¶¶ 1-9) is neither necessary nor admissible. (U.S. Appx. at 4, 9, 11-15.) The position description unambiguously gives Mr. Daugherity

non-procurement authority to carry out his obligations, in part through arrangements with third parties, and the position description serves as an adjunct to a regulation, rather than as a bilateral agreement. *See Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1369 (Fed. Cir. 2003) (extrinsic evidence is inadmissible to construe a regulation); *cf. Coast Fed. Bank, FWB v. United States*, 323 F.3d 1935, 1038 (Fed. Cir. 2003) (*en banc*) (resort to extrinsic evidence is impermissible when the contract is unambiguous). Telenor files contemporaneously a motion to strike these portions of the declarations.

## IV. At a Minimum, State Department Counsel's Formal Position Statement Deserves Significant Evidentiary Weight

The clear statements in Mr. Daugherity's position statement of his authority to make arrangements with third parties to carry out humanitarian programs are underscored by the agency's own admission. In a letter to Telenor's General Counsel, State Department counsel stated the agency's formal "position" that Mr. Daugherity had actual authority. (Tel. Appx. at 2-3.) This was not a throw-away, off-the-cuff observation. It was a factually researched, written statement published to a likely litigation adversary. Thus, his admission was "sufficiently formal and conclusive" to bind the government. *United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540,

1564 (E.D. Tex. 1986), *aff'd*, 829 F.2d 532 (5th Cir. 1987). While a binding admission may be made before as well as during court proceedings, *id.*; *Chaffee v. Kraft Gen. Foods, Inc.*, 886 F. Supp. 1164, 1168 (D.N.J. 1995) (citing 9 WIGMORE, EVIDENCE § 2588 (Chadbourne rev. 1981), Telenor also concedes that the Court has discretion whether to use a statement as a judicial admission, *see MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340-41 (6th Cir. 1997), and that the Department of Justice has the duty to represent the United States in litigation. Nevertheless, at a minimum, the formal statement of position by State Department counsel based on a factual inquiry in the face of threatened litigation should be treated as a weighty evidentiary admission. *E.g.*, *Chaffee*.

## V. The Bailment Contract Was Ratified by Those with Bailment Authority

Mr. Daugherity was not acting as the Lone Ranger in this operation. It is conceded by the government that Mr. Daugherity's immediate supervisors, Mr. Lee Schwartz, Acting Director of the Office of the Geographer and Global Issues, and Mr. William Wood, Deputy Assistant Secretary for Analysis and Information Management, were fully aware of, and approved, the bailment arrangements with Telenor. (Schwartz Decl. ¶ 1; Daugherity Decl. ¶ 7, U.S. Appx. at 9, 4-5.) Mr. Paul of Telenor met with Secretary Wood after the agreement was signed. (Paul Aff. ¶ 6, Tel.

Appx. at 12.) Under the FAM, Mr. Schwartz and Mr. Wood certainly had authority to enter into non-procurement arrangements with third parties in order to carry out the responsibilities of their positions, Director Scharwtz having been given responsibility "for a complete functional field," 1 FAM 014.3(c) (Tel. Appx. at 24), and Secretary Wood being his supervisor and responsible for managing the office. *Id.* 014.6.c(1) (Tel. Appx. at 26) ("The deputy/assistant participates with the principal in carrying out the full range of management responsibilities and acts with full authority over the total work of the organization during the principal's unavailability or absence.") *See also id.* 014.7.b (Tel. Appx. at 27-28) ("Authority vested in an individual position becomes a part of the authority of each position in the direct line of supervision above that position . . . .")

"Ratification occurs when a ratifying official has actual or constructive knowledge of an unauthorized agreement, and expressly or impliedly adopts the agreement." *Aero-Abre v. United States*, 39 Fed. Cl. 654, 657 (1997) (citing *Williams v. United States*, 130 Ct. Cl. 435, 446-47, 127 F. Supp. 617, 623 (1955)); *see Dolmatch*, 40 Fed. Cl. at 438. On the undisputed facts, if ratification of the bailment agreement was necessary, Secretary Wood and Director Schwartz did so.

VI. In the Alternative, Any "Procurement" Component of the Bailment Is Segregable

Implied in the government's argument is that the final sentence of the agreement signed by Mr. Daugherity converts the bailment into a procurement. That sentence reads, "In the event that the terminals should be used for other purposes Telenor will provide service to the user at agreed upon service rates." (Tel. Appx. at 1.) This provision is simply a specification of what damages would be paid in the event the government breached the bailment agreement by using Telenor's equipment in unauthorized ways. (Second Paul Aff. ¶ 6, Tel. Appx. at 15-16.) *See* 8A AM. JUR. 2D *Bailments* § 256 (1997) (on breach of bailment contract, term specifying damages will be enforced).

But even if the last sentence of the bailment agreement were construed as an offer to enter into a separate procurement contract, it would be just that – a separate provision that is divisible from the bailment contract. *See Urban Data Sys., Ins. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983) (invalidity of price terms did not invalidate remainder of contract); RESTATEMENT (SECOND) OF CONTRACTS § 184 (1979). If the last sentence were ruled to be unenforceable, the remainder of the letter would still remain as a valid bailment agreement. *Id.*; 15 GRACE MCLANE GIESEL, CORBIN ON CONTRACTS § 89.10 at 659 (rev. ed. 2003) ("Modern courts

continue to view [unforceable remedies] provisions . . . as easily separable from the rest of the contract so that the troublesome provision is excised and the remaining contract stands fully enforceable."); 8 RICHARD A. LORD, WILLISTON ON CONTRACTS § 19:69 (4th ed. 1998). With the last sentence excised, the damages for breach of the bailment agreement would be unspecified, but implied by law. Those implied damages are the fair market value of the unauthorized use of the equipment and associated satellite communications. *See Urban Data Sys.*, 699 F.2d at 1154-55 (recovery for goods used in *quantum valebant*); 8A AM. JUR. 2D *Bailments* §§ 256, 260 (1997). In this instance, the damages are easily ascertained as the publicly published rates for the service.

VII. Summary Judgment Against Telenor Is Inappropriate for Other Reasons

When Telenor filed this action, it had in hand the formal position statement of the State Department that Mr. Daugherity had actual authority to commit to the bailment agreement. Thus, it did not believe that pleading alternative sources of authority and pursuing alternative avenues of relief would be necessary. However, even if Mr. Daugherity were found not to have express or implied authority to execute the bailment contract, summary judgment could not be granted against Telenor and its complaint be dismissed with prejudice, because alternate forms of relief are available

to it. In such circumstances, Telenor should be granted leave to pursue those alternative remedies.

First, as the government admits, Mr. Daugherity's supervisors, including Director Schwartz and Secretary Wood, were well aware of the project and its terms. (Daugherity Decl. ¶¶ 7-9, U.S. Appx. at 4-5.) Others, perhaps including even higher-ranking officials or officials with procurement warrants, were likely also aware. (Second Paul Aff. ¶ 3, Tel. Appx. at 15.) Thus, there is an open issue concerning whether Secretary Wood or others had procurement authority and ratified the agreement, even if it were (improperly) considered to be a procurement contract. Telenor has attached in the Appendix a Rule 56(f) affidavit of counsel explaining why it needs discovery to determine the relevant facts related to ratification, should this be necessary.

Second, the government cannot simply walk away without paying for services it uses for its benefit in situations in which those services were not volunteered. In such situations, an implied-in-fact contract is created. *Clark v. United States*, 95 U.S. 539 (1877); *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998); *Silverman v. United States*, 230 Ct. Cl. 701, 679 F.2d 865 (1981); *Philadelphia Suburban Corp. v. United States*, 217 Ct. Cl. 705, 707 & n.1 (1978) (citing cases). As the Court of Claims

stated in *Prestex Inc. v. United States*, 162 Ct. Cl. 620, 628, 320 F.2d 367, 373 (1963), "Even though a contract be unenforceable against the Government, because . . . not authorized, or for some other reason, it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it."

All the factual elements of an implied-in-fact contract are present here. There is no dispute that the government took and used Telenor's satellite communication services for its own benefit, and there is no dispute that Telenor did not provide service outside the specified use of the DART Pilot Program voluntarily. To the contrary, the parties provided in the executed agreement that the government would pay for any uses of the equipment not authorized by the bailment. Thus, the United States must pay. The government would be unjustly enriched if it did not. *Id.; accord United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed. Cir. 1986); *Urban Data Sys.*, 699 F.2d at 1154 (Fed. Cir. 1983). *See also Clark*, 95 U.S. at 542-43; *Gould, Inc. v. United States*, 67 F.3d 925, 927-30 (Fed. Cir. 1995). Telenor should be granted leave to pursue this alternative remedy, should it be necessary.

Third, if relief is not available under an express or implied contract, Telenor may recover under the Takings Clause. U.S. CONST. amend V. Its

property was taken involuntarily for public use, and Telenor has not received just compensation. Thus, Telenor is entitled to the fair value of that property. *See Janowsky*, 133 F.3d at 892. Telenor should also be granted leave to pursue this alternative remedy, should it be necessary.

## Conclusion

Mr. Daugherity had both express and implied authority to enter into this non-procurement bailment contract. Along with that authority comes the obligations of the United States to have honored the agreement and to pay damages when it did not. Summary judgment should be entered for Telenor on the authority issue.

But even if the Court were to find the uncontroverted facts insufficient to grant Telenor summary judgment, summary judgment could not be entered for the United States in this case. Material facts are in dispute concerning whether the agreement was ratified by those with authority. (See Rule 56(f) Affidavit, Tel. Appx. at 17-21.)

For these reasons, as well as those stated in its original motion papers as supported by the Affidavit of Lawrence Paul (Tel. Appx. 10-13), Telenor's Motion for Summary Judgment Re Authority should be granted and the government's cross-motion denied.

Respectfully submitted,

s/Frederick W. Claybrook, Jr.

Frederick W. Claybrook, Jr.
(Counsel of Record)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

January 31, 2006

DCIWDMS: 2696359_1