# APPENDIX TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# INDEX TO APPENDIX

PAGE(S)

Letter of Timothy P. McIlmail to Frederick W. Claybrook, Jr., Sept. 21, 2006 . . . . 1

Certification of Timothy P. McIlmail Pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims, Sept. 29, 2006 . . . . 2

Letter of Timothy P. McIlmail to Frederick W. Claybrook, Jr., Sept. 8, 2006 . . . . 3

Defendant's Request For The Production Of Documents, July 5, 2006 . . . . 5

Defendant's First Set Of Interrogatories And Second Set Of Requests For The Production Of Documents, July 11, 2006 . . . . 9

Telenor's Responses To Defendant's First Set Of Interrogatories, Aug. 3, 2006 . . . . 13

Email of Lawrence B. Paul to Britt-Carina Horncastle, May 9, 2003 . . . . 19

Transcript of Deposition Of Lawrence Paul, Sept. 6, 2006 . . . . 21

**U.S. Department of Justice**

Civil Division

DJ# 154-05-528
PMM:TPMcIlmail

Phone: (202) 514-4325
Fax: (202) 514-7965

*Washington, D.C. 20530*

September 21, 2006

SENT BY ELECTRONIC AND U.S. MAIL

Frederick W. Claybrook, Jr.
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Suite 1100
Washington, DC 20004-2595

Re: <u>Telenor Satellite Services, Inc. v. United States</u>,
No. 05-528C (Fed. Cl.)

Dear Mr. Claybrook:

We have received no response from you to our September 8, 2006 letter requesting that you supplement your Response to our Requests for Production of Documents Nos. 4 and 12 by producing the invoices issued to Telenor by INMARSAT, Terrestrial Phone Company, and the internet connectivity service provider to which Lawrence Paul alluded in his deposition testimony on September 6, 2006, as well as any other such documents responsive to those requests. The September 19, 2006 deposition testimony of Sandra Clotworthy confirms the existence and ready availability of such documents, including from Telenor Satellite Services Norway ("TSSN") to Telenor Satellite Services, Inc. ("TSSI"). Pursuant to Rule 37(a) of the Rules of the United States Court of Federal Claims, we notify you that unless we receive from you all such documents by September 28, 2006, we will apply to the United States Court of Federal Claims for an order compelling their production.

Thank you for your prompt attention to this matter.

Very truly yours,

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch

## CERTIFICATION

Pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims, defendant, the United States, certifies that, through counsel, it has in good faith conferred with plaintiff, Telenor Satellite Services, Inc., by letter dated September 8, 2006 (Appendix 3), and by telephone conference conducted on September 26, 2006, to secure the documents responsive to defendant's Requests for Production of Documents Nos. 4 and 12 without Court action.

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attorney for Defendant

September 29, 2006

**U.S. Department of Justice**

Civil Division

DJ# 154-05-528
PMM:TPMcIlmail

Phone: (202) 514-4325
Fax: (202) 514-7965

*Washington, D.C. 20530*

September 8, 2006

Frederick W. Claybrook, Jr.
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Suite 1100
Washington, DC 20004-2595

Re: Telenor Satellite Services, Inc. v. United States,
No. 05-528C (Fed. Cl.)

Dear Mr. Claybrook:

Pursuant to Rule 37(a)(2)(A) of the Rules of the United States Court of Federal Claims ("RCFC"), we request that you supplement your Response to our Requests for Production of Documents Nos. 4 and 12 by producing forthwith the invoices issued to Telenor by INMARSAT, Terrestrial Phone Company, and the internet connectivity service provider that Lawrence Paul alluded to in his deposition testimony on September 6, 2006, as well as any other such documents responsive to those requests.

Your objections to our Requests for Production of Documents Nos. 4 and 12 are not well-taken. Documents responsive to those requests, including the invoices to which Mr. Paul alluded, are relevant to whether and to what extent Telenor suffered damage as a result of the use of the terminals that Telenor alleges to have been a breach of contract. Moreover, Mr. Paul's testimony indicates that complying with the requests would not be unduly burdensome, but that responsive documents are readily available from Robert Baker of Telenor's finance department. Finally, with respect to your sensitivity objection, the invoices to which Mr. Paul alluded to would appear to be ordinary business records; nevertheless, if they are sensitive, your remedy is not to withhold the documents, but to to request a protective order pursuant to RCFC 26(c)(7).

Thank you for your prompt attention to this matter.

Very truly yours,

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch

McElmail
Rm: 11052

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-528C<br>(Judge Baskir) |

FILE

DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant requests that plaintiff, Telenor Satellite Services, Inc., produce, within 30 days of the date of service of this request, the following requested documents at the United States Department of Justice, 1100 L. Street, N.W., Room 11030, Washington, D.C. 20530. In responding to these requests, plaintiffs should be guided by the following instructions and definitions.

INSTRUCTIONS

1. Should you claim privilege or protection for any document about which you have withheld from production upon the grounds of any privilege or protection, state the date on which the document was drafted, state each privilege or protection upon which you rely in withholding the document, identify the person who drafted the document, identify each



154-05-528.05

<u>Request for the Production of Documents No. 4</u>:

All documents reflecting the costs to Telenor of the use of Telenor's equipment by the Government, particularly documents reflecting time of use of the equipment, including any invoices or bills to Telenor from other companies, including companies related to Telenor.

<u>Response</u>:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. MCCARTHY
Assistant Director

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 514-4325
Facsimile: (202) 514-7965

OF COUNSEL:
ONA M. HAHS
Attorney-Adviser
Department of State

July 5, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 7, 2006, I caused to be placed in the United States mail (first-class postage prepaid) a copy of the foregoing "DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS," addressed as follows:

Frederick W. Claybrook, Jr.
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Suite 1100
Washington, DC 20004-2595

Ena M. Goddard

McElmail
Rm: 11052

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-528C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S FIRST SET
OF INTERROGATORIES AND SECOND SET OF
REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26, 33, and 34 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, requests that plaintiff, Telenor Satellite Services, Inc., answer each of the following interrogatories, in writing and under oath, and serve such answers within 30 days of the date of service of this request. Defendant also requests that plaintiff produce, within 30 days of the date of service of this request, the following requested documents at the United States Department of Justice, 1100 L. Street, N.W., Room 11052, Washington, D.C. 20530. In responding to these requests, plaintiff should be guided by the following instructions and definitions.

FILE

154-05-528.05

Request for the Production of Documents No. 12:

All documents reflecting any purchase by Telenor from any another company any part of the service provided to the users of Telenor's equipment during the period March through June 2003.

Response:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. MCCARTHY
Assistant Director

TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 514-4325
Facsimile: (202) 514-7965

OF COUNSEL:
ONA M. HAHS
Attorney-Adviser
Department of State

July 11, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 11, 2006, I caused to be placed in the United States mail (first-class postage prepaid) a copy of the foregoing "DEFENDANT'S FIRST SET OF INTERROGATORIES AND SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS," addressed as follows:

Frederick W. Claybrook, Jr.
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Suite 1100
Washington, DC 20004-2595

Eva M. Goddard

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TELENOR SATELLITE SERVICES, INC., Plaintiff, v. UNITED STATES, Defendant. | ) | No. 05-528C Baskir, J. |

TELENOR'S RESPONSES TO DEFENDANT'S FIRST AND SECOND SETS OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Telenor submits the following objections and responses to Defendant's First and Second Sets of Requests for the Production of Documents ("Requests"). Telenor has not produced again documents that have already been disclosed to the Defendant, including those produced in Telenor's initial disclosures made pursuant to Court of Federal Claims Rule 26.

GENERAL OBJECTIONS

Telenor's response to the Requests is made to the best of Telenor's current employees' present knowledge, information, and belief. Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the

communications concerning the use of Telenor's equipment by the United States Army, particularly between Michael Gray and Barbara Spencer and between Michael Gray and Brit Horncastle.

RESPONSE:

See documents at tab 1.

REQUEST NO. 2:

All documents reflecting communications internal to Telenor concerning the use of Telenor's equipment.

RESPONSE:

See documents at tab 2.

REQUEST NO. 3:

All documents reflecting communications between Telenor and the United States Army concerning the use of Telenor's equipment, including communications between Barbara Spencer and Lt. Col. Tauber.

RESPONSE:

See documents at tab 3.

REQUEST NO. 4:

All documents reflecting the costs to Telenor of the use of Telenor's equipment by the Government, particularly documents reflecting time of use of the equipment, including any invoices or bills to Telenor from other companies, including companies related to Telenor.

RESPONSE:

Telenor additionally objects to this request because it seeks documents that are not relevant to this action or calculated to lead to relevant information. This request seeks documents of a highly sensitive nature. It would be unduly burdensome for Telenor to comply with this request.

REQUEST NO. 5:

All documents reflecting communications between Telenor and third parties, particularly companies related to Telenor, concerning the use of Telenor's equipment.

RESPONSE:

See documents at tab 5.

REQUEST NO. 6:

A copy of Telenor's published rates that were applicable to Telenor's equipment during the period March through June 2003.

RESPONSE:

See documents at tab 6.

REQUEST NO. 7:

Drafts of the text of the letter that is Exhibit A to the complaint.

RESPONSE:

Telenor additionally objects to this request to the extent it implies that

RESPONSE:

See documents at tab 11.

REQUEST NO. 12:

All documents reflecting any purchase by Telenor from any another company any part of the service provided to the users of Telenor's equipment during the period March through June 2003.

RESPONSE:

Telenor additionally objects to this request because it seeks documents that are not relevant to this action or calculated to lead to relevant information. This request seeks documents of a highly sensitive nature. It would be unduly burdensome for Telenor to comply with this request.

REQUEST NO. 13:

All documents internal to Telenor, such as memoranda or other communications, discussing, prior to delivery of Telenor's equipment to the Government, describing or granting approval of that plan.

RESPONSE:

See, *inter alia*, tab 2.

REQUEST NO. 14:

All documents reflecting communications between or among Telenor, Global Relief Technologies, Panasonic, or ESRI, or any combination

Respectfully submitted,

Frederick W. Claybrook, Jr.
(Counsel of Record)
Peter J. Eyre
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

August 4, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 4, 2006, I caused to be hand delivered via courier a copy of the foregoing "TELENOR'S RESPONSES TO DEFENDANT'S FIRST AND SECOND SETS OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS," addressed as follows:

Timothy P. Mcilmail
Trial Attorney
Commercial Litigation Brach
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20005

Peter J. Eyre

DART

**Klakamp, Cy**

| | |
|---|---|
| **From:** | Paul, Lawrence B. |
| **Sent:** | Friday, May 09, 2003 10:09 AM |
| **To:** | Horncastle, Britt-Carina |
| **Cc:** | Baumgartner, Mary K |
| **Subject:** | FW: Is it possible to get updated traffic numbers on the DART terminal use? |

Britt

Kim did this quick assessment of the DART team's space segment usage. Kim's e-mail is based on the "raw" data in the Excel file from Michelle that is two e-mails below. Note that the DART team is making a lot of Mini-M voice calls - even though the idea of the Pilot is to get them to use the HSD mode.

Revenue Potential would have been (if charged same as our ORHA proposal):

| | |
|---|---|
| Mini-M: | $40.50 per day / per terminal (@ $1.35 per minute) |
| HSD: | $156.25 per day / per terminal (@ $6.25 per minute) |
| Total | $196.75 per day / per terminal |

Our total exposure to Inmarsat in RUCs is approximately $16,182.48 (based on average HSD RUC of $2.76 and average Mini-M RUC of $0.58). This is based on the total traffic in Michelle's e-mail below - HSD is $13,639.92 and Mini-M is $2542.56 in RUCs (this probably under estimates our RUC liabilities since I used the average RUC prices). This also does not include our call termination expenses.

Tore has asked twice about the ADU for the DART trial. I plan to send him this info later today, but wanted you to look at it first. It may be time to consider putting an end to the DART pilot program.

Larry

---

The ADUs are as follows:

| | |
|---|---|
| Mini-M | 30 minutes a day |
| HSD | 25 minutes a day |

I used the period March 28 - May 7. (Looking at the traffic trends, it seemed like March 28 was probably the first real day of use in the field.)

One thing that you should keep in mind about these ADUs. They are skewed because we are only calculating the ADUs during a period when we know the terminals were basically used every day. ADUs in a forecast also need to take into account the fact that an average terminal will be sitting in a closet some days of the year, so the ADU in a forecast would be lower than what we are showing above (unless we believe that every terminal will be used constantly throughout the year).

I am concerned about the Mini-M volumes. Please listen to my voicemail before you give these numbers to Tore. There may be other explanations, but I am concerned that they are passing around the phones for either the military or Iraqis to contact their families. A very nice thing to do, but I don't think this is in the spirit of our agreement. Don't say anything to Michael or Reed yet. Let me show you what I'm referring to, since you may conclude that the calls could be for legitimate DART purposes.

Kim

-----Original Message-----
From: Wagner-Suziedelis, Michelle C.
Sent: Thursday, May 08, 2003 4:51 PM
To: Baumgartner, Mary K

Cc: Paul, Lawrence B.
Subject: RE: Is it possible to get updated traffic numbers on the DART terminal use?

..ini-M calls: 4,382 minutes

dart.xls

HSD cal s: 4,942 minutes
Total: 9,324 minutes

See attached spreadsheet.
Thanks,

Michelle

Michelle Wagner-Suziedelis
Director, Product Engineering
Telenor Satellite Services, Inc.
Email: michelle.wagner@telenor-usa.com
1101 Wootton Parkway, 10th Floor
Rockville, MD 20852 USA
Phone: +1-301-838-7815
Fax: +1-301-838-7828

-----Original Message-----
From: Baumgartner, Mary K
Sent: Wednesday, May 07, 2003 5:07 PM
To: Wagner-Suziedelis, Michelle C.
Cc: Paul, Lawrence B.
ubject: Is it possible to get updated traffic numbers on the DART terminal use?

-----Original Message-----
From: Wagner-Suziedelis, Michelle C.
Sent: Tuesday, April 15, 2003 11:57 AM
To: Baumgartner, Mary K
Cc: Regan, Keith G
Subject: RE: Do you have any indication about how much the DART time is using the GAN terminals?

It looks like a total of 602 minutes for all 4 terminals.
See detailed call records attached.
Thanks,
Michelle
Michelle Wagner-Suziedelis
Director, Product Engineering
Telenor Satellite Services, Inc.
Email: michelle.wagner@telenor-usa.com
1101 Wootton Parkway, 10th Floor
Rockville, MD 20852 USA
Phone: +1-301-838-7815
Fax: +1-301-838-7828

-----Original Message-----
From: Wagner-Suziedelis, Michelle C.
Sent: Monday, April 14, 2003 3:58 PM
To: Baumgartner, Mary K

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - x
TELENOR SATELLITE SERVICES, INC. :
Plaintiff, :
v. : No. 05-528C
THE UNITED STATES OF AMERICA : (Judge Baskir)
Defendant. :
- - - - - - - - - - - - - - - - x

Washington, D.C.

Wednesday, September 6, 2006

Deposition of LAWRENCE PAUL, called for examination by counsel for the Defendant in the above-entitled matter, pursuant to notice, the witness being duly sworn by CARLA L. ANDREWS, a Notary Public in and for the District of Columbia, taken at the offices of the Crowell & Moring, 1001 Pennsylvania Avenue, N.W., Street, N.W., Washington, D.C. 20004-2595, at 1:15 p.m., Wednesday, September 6, 2006, and the proceedings being taken down by Stenotype by CARLA L. ANDREWS and transcribed under her direction.

P-R-O-C-E-E-D-I-N-G-S

Thereupon,

LAWRENCE PAUL

was called as a witness and, after being duly sworn by the notary, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. McILMAIL:

Q I am Tim McIlmail from the Department of Justice. My address is 1100 L Street, Northwest, Washington, D.C. It is September 6 at about 1 o'clock. We are at Crowell & Moring in D.C. to take the testimony of Larry Paul. With us are Barbara Spencer from Telenor; Rick Claybrook from Crowell; Carla Andrews, the court reporter; and Ona Hahs from the State Department.

Would you state your name?

A Lawrence Paul.

Q What is your position at Telenor right now?

A Director of Business Development.

Q What was your position back in 2003?

A Director of Business Development.

Q This is Exhibit 1, Exhibit A to the

Q And would you pick up again T 00004.
MR. EYRE: Which document, Tim?
MR. McILMAIL: T 00004.
BY MR. McILMAIL:
Q And look down at the bottom where you have your bullet points to Michael. The first bullet point says, For a two-month pilot program for the USAID DART team out of Kuwait, the pilot program will start the third full week of March 2003.
How does that square with what you are saying that the start of the program was March 12, 2003?
A As I said a moment ago, what I was referring to here is what we anticipated to be the field portion of the program.
Q Why don't you say that in your bullet point to Michael?
A I don't recall why I chose those words.
Q Isn't it because you expected that the program would start during the first full week of March 2003?
A No.
Q Do you know whether Telenor was invoiced by

any third party for the use of those terminals?

A Would you be more specific?

Q Than what? Do you understand the question?

A There are many third parties in the world.

Q And just tell me whether you know whether any third party invoiced Telenor for use of those terminals?

A Yes.

Q Who?

A We were invoiced by Inmarsat.

Q How much did they invoice?

A I don't know.

Q Who would know?

A I am not sure it is even possible to get an exact figure.

Q Who would know?

A The Finance Department.

Q Is that Bob Baker?

A He would be a place to start.

Q Do you know what RUC charge means?

A Yes.

Q Did Inmarsat charge for RUC?

A I believe they did.
Q Do you know of any other third party who invoiced Telenor for the use of those terminals?
A I believe we would have been charged by Terrestrial Phone Company.
Q Terrestrial Phone Company?
A Yes, for reasons of call termination.
Q Would Bob Baker know about that?
A He would be a place to start.
Q Do you know if Telenor was invoiced by some other company?
A We would have been invoiced for Internet Conductivity.
Q Is that a company?
A That's --
Q A service?
A A service.
Q By whom? Who would you have been invoiced by?
A We have many Internet service providers. I am not sure who. I am not responsible for them. I am not sure who they would be.

Q Would Bob Baker know about that?
A He would be a place to start.
Q Any other third parties invoice Telenor for the use of those terminals?
A We bought the GAN terminals.
Q And any other companies. Did any other companies invoice Telenor for the use of those terminals?
A For the use of those terminals?
Q Yes.
A Could you be more specific?
Q Yes, the same use that you are charging -- that Telenor is charging the State Department for?
A Those are the ones that come to mind at the moment.
Q Forgive me if I ask this. I think I did. Do you know how much Inmarsat charged?
A No.
Q Do you know if Telenor paid?
A Yes, we are current on our payments to Inmarsat. That's all I can say.
Q Do you know how much Terrestrial Phone

Company charged?

MR. EYRE: Objection. Ambiguous.

BY MR. McILMAIL:

Q Do you know if Telenor paid Terrestrial?

A We pay our bills.

Q Do you know if that -- do you how much that Internet conductivity provider charged?

A No.

Q Do you know if Telenor is current with all of its Internet conductivity service providers?

A To the best of my knowledge.

THE WITNESS: Can we take a break?

MR. McILMAIL: Sure.

(A recess was held.)

BY MR. McILMAIL:

Q This is T 00877. Do you know what that is?

A It appears to be spot rates for Inmarsat Services. But, again, I don't work in the billing and Finance Department, so I am not all that familiar with this.

Q You don't know whether these are the rates that Telenor used to determine what to charge the State

A I would like to read this first.

MR. EYRE: Are your questions related?

MR. McILMAIL: No, they are not related.

MR. EYRE: So you want him to focus on 877 first?

THE WITNESS: I will focus on T 00045 first, then.

BY MR. McILMAIL:

Q At the top of T 00045 is an E-mail from you to Britt Horncastle on Friday, May 9, 2003, at 10:09 a.m. regarding the DART pilot program, right?

A It appears to be, yes.

Q Do you have any reason to believe it is not?

A No.

Q Do you remember sending this E-mail?

A No.

Q What would you have meant in the last sentence of the first paragraph where you say, Even though the idea of the pilot is to get them to use the HSD mode?

A What I would be referring to there is the fact that we are focusing on mapping information and

Q What were Michelle Wagner-Suziedelis' duties with respect to the DART pilot program?

A Michelle worked in our Engineering Department at that point. She was one of our experts on the GAN equipment responsible for training. And we asked her to train Reid and work on the use of the equipment and to make sure that the prototype form and the ESRI files would pass through the system.

Q If you wanted to find a record at Telenor, who would you go to?

MR. EYRE: Object as ambiguous.

THE WITNESS: It depends on the type of record.

BY MR. McILMAIL:

Q If you wanted to go and find -- if you needed a copy of an invoice, who would you ask at Telenor for a copy of that invoice? What I want to know is who maintains records at Telenor so if I need to call somebody --

A That would be our Finance Department. I would again suggest you contact Bob Baker because that group reports to him, and he could tell you

specifically who the best person would be.

Q What about E-mail? If you wanted to pull E-mail from a bunch of people's different E-mail files, who would you ask at Telenor?

A I would suggest you contact the IT director, who would be Mr. Chris Walters.

MR. McILMAIL: I don't have any further questions.

MR. EYRE: Let me just say on the record that I am reserving all objections, except those with respect to form, which I have made.

MR. McILMAIL: Thank you for your time.

THE WITNESS: Thank you.

(Signature was not waived.)

(At 3:35 p.m., the deposition was concluded.)

# CERTIFICATE OF NOTARY PUBLIC

I, Carla L. Andrews, the officer before whom the foregoing deposition was taken, do hereby certify that the witness, whose testimony appears in the foregoing deposition was duly sworn by me, that the testimony of said witness was taken by me in stenotype and thereafter reduced to typewritten form under my supervision, that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

Carla L. Andrews

Carla Andrews, Notary Public for the
District of Columbia

My Commission Expires: January 14, 2009