IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TELENOR SATELLITE SERVICES, INC., Plaintiff, v. UNITED STATES, Defendant. | No. 05-528C Baskir, J. |

TELENOR'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The documents for which Defendant requests an order to compel production – those relating to Telenor's own cost of providing the unauthorized voice and data services used by the Defendant – are not relevant to the current action or reasonably calculated to lead to admissible evidence. Thus, the motion should be denied.

By seeking these documents the Defendant is apparently attempting to lay the groundwork for an assertion that the government should pay less than fair market value for the unauthorized services it used. Telenor generously loaned equipment to the Defendant for use in a pilot program designed to assist in humanitarian crises. Without seeking authorization from Telenor (indeed, without informing Telenor), the Defendant allowed

the equipment to be used for extensive personal telephone calls, personal e-mails, and recreational web-surfing. Not only did this unauthorized use occur after the conclusion of the program, but Telenor has now discovered that it occurred during the two-month pilot program. The abuse was only stopped when Telenor discovered it and disabled the machines. The period of misuse, the extent of the misuse, and the damages suffered by Telenor will be set out at trial.

The March 12, 2003, contract between Telenor and the Department of State specifies that "Telenor must authorize any use of the GAN terminals for purposes other than what has been stipulated in the two-month DART pilot program. In the event that the terminals should be used for other purposes Telenor will provide service to the user at agreed upon service rates." Tel. App. 1. This language made it clear that Defendant had to pay for any unauthorized use and expressly put the burden on the Defendant to approach Telenor if it wanted to use the terminals for purposes unrelated to the DART pilot program at other than the standard published rates for other users. Defendant did not get authorization and did not request a special rate – it simply started using the equipment for non-pilot program purposes.

At issue here is <u>how</u> to measure Telenor's damages. It is well established that the breaching party must pay the fair market value for the services used. The general rule in these cases is that "<u>value is determined in the marketplace of the property sold, and is not based on the contractor costs or on a reasonable rate of return for the contractor</u>." *Barrett Refining Corp. v. United States*, 42 Fed. Cl. 128, 134 (1998), *quoting Cities Serv. Gas Co. v. United States*, 500 F.2d 448, 457 (1974) (internal quotations omitted) (emphasis added). The value in the marketplace is the fair market value. Here, the fair market values of Telenor's services are its published rates – and this is what the Defendant must pay for the unauthorized use. A copy of Telenor's published (and publicly available) rates in effect at the time of the Defendant's misuse can be found in Telenor's Appendix to this Opposition (at 2).

The situation at issue (*i.e.,* damages for completed performance) is analogous to the line of cases dealing with implied contracts, where an entity must pay the fair market value for goods or services delivered, accepted, and used. *See, e.g., United States v. N. Am. Transp. & Trading Co.,* 253 U.S. 330, 335 (1920); *Urban Data Sys., Inc. v. United States,* 699 F.2d 1147, 1154-55 (Fed.Cir. 1983); *Cities Serv. Gas Co.*, 205 Ct. Cl. at 32. Additionally, restitution provides a useful analogy, because courts must

quantify the value of what the injured party has provided to the breaching party – and it has long been understood that courts should (and do) award the fair market value of these goods or services. *See, e.g.,* RESTATEMENT (FIRST) OF CONTRACTS § 347 (1932) ("the injured party can get judgment for the reasonable value of a performance rendered by him.") (emphasis added); *see also* cmt. c (reasonable value is "the amount for which such services and materials . . . could have been purchased from one in the plaintiff's position at the time they were rendered"). *See also Acme Process Equip. Co. v. United States*, 347 F.2d 509, 530 (Ct. Cl. 1965), *rev'd on other grounds*, 385 U.S. 138 (1966) (using direct and indirect cost data, plus profit, to construct a reasonable price is only done for unique goods without a fair market value).

The Defendant, instead, suggests by pursuing this discovery that it is only responsible for certain of Telenor's direct costs. In crafting its argument, the Defendant points (at 4) to a number of wholly irrelevant cases. These cases, such as *BMY-Combat Sys. Div. of Harsco Corp. v. United States*, 44 Fed. Cl. 141 (1998), deal with a situation in which damages are sought for performance prevented, not work performed, *i.e.*, an anticipated profits remedy. Note how the Defendant itself discusses these cases in its motion (at 4): "Damages for breach of contract should

place the injured party in as good a position as if the breaching party had fully performed" (emphasis added). The very language used to describe these cases demonstrates why they are irrelevant.

A simple example illustrates the irrelevance of the Defendant's request. Imagine a grocery store donates oranges to be given to the homeless. However, instead of giving the oranges to the homeless, the person in charge of the donation simply stands outside the grocery store and gives the oranges to customers as they enter the store. When the store discovers what the person is doing (*i.e.*, failing to deliver the oranges to the homeless and instead giving them away to paying customers without the store's authorization), the store demands payment for the oranges. When asked to pay the retail price for the oranges, because he used the oranges in an unauthorized way, he refuses to pay the market price and instead demands to know the store's wholesale price for the oranges, its "out-of-pocket" cost. In fact, the store's damage is the fair market value of the oranges, because that is the price every other customer would pay for them.

This is not a case where performance was prevented or did not occur. Cases addressing lost profits or anticipatory breach are not applicable to the current dispute. Because the Defendant used Telenor's

product, Telenor is seeking from the Defendant the fair market value of what the Defendant used.

The fair market values for these services are Telenor's published rates – these rates are what the public pays, and they are what the Defendant must pay. Documents relating to Telenor's costs to provide voice and data services are neither relevant nor reasonably calculated to lead to any admissible evidence.

For the foregoing reasons, Telenor requests that this Court deny Defendant's motion in its entirety.

Respectfully submitted,

Frederick W. Claybrook, Jr.
(Counsel of Record)
Peter J. Eyre
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500

Of Counsel

Barbara L. Spencer, Esq.
General Counsel
Telenor Satellite Services, Inc.
1101 Wootton Parkway, 10th Floor
Rockville, Maryland 20852

October 11, 2006

## CERTIFICATE OF FILING

I certify that on October 11, 2006, a copy of the foregoing "TELENOR'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Peter J. Eyre